**U.S. Department of Justice**



*United States Attorney*
*Eastern District of New York*

EG/RJN
F.#2009R01167

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 18, 2011

**BY HAND AND ECF**

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:  United States v. Anthony Manzella
            Criminal Docket No. 10-0010 (S-5) (ENV)

Dear Judge Vitaliano:

      The government respectfully submits this letter in
response to the defendant's objections to the Probation
Department's Presentence Investigation Report ("PSR"), dated June
13, 2011 ("Def. Obj.") and his sentencing submission ("Def.
Let."), dated July 11, 2011.  Manzella is scheduled to be
sentenced by the Court on July 22, 2011 at 12:00 p.m.

I.    Background

      On December 8, 2010, the defendant pled guilty pursuant
to a plea agreement ("Plea Agreement") to Count Nine of a
superseding indictment charging a conspiracy to commit Hobbs Act
robbery - the robbery of the Ocean Breeze pharmacy in Staten
Island, New York ("Ocean Breeze Pharmacy") - in violation of 18
U.S.C. § 1951(a).

      The charge stemmed from an investigation into the
activities of members and associates of La Cosa Nostra, and in
particular, into multiple robberies committed over several years
by members and associates of the Luchese organized crime family
of La Cosa Nostra ("Luchese crime family").  The investigation
revealed that although Manzella was criminally associated with
the Gambino organized crime family of La Cosa Nostra ("Gambino
crime family"),[1] he also committed robberies, between

---

    [1]    In April 2010, Manzella was indicted in the Southern
District of New York for racketeering and racketeering-related
activity in connection with Manzella's association with the

approximately 2003 and 2008, with other individuals, including individuals associated with the Luchese crime family.

As described in the PSR, Manzella participated in several robberies between 2003 and 2008.  In 2003, he participated in the robbery of a diner in Manhattan.  PSR ¶ 89. In 2007, he participated in the attempted robbery of the business partner of an individual Manzella and his coconspirators believed to be cooperating with the government.  Id. ¶ 91.[2]  Then, in 2008, Manzella committed four robberies - a robbery of a card game in Staten Island run by members and associates of organized crime, a robbery of a marijuana dealer in upstate New York, a robbery of an elderly couple in Staten Island and the robbery of the Ocean Breeze Pharmacy.  PSR ¶ 92-94.

Although he committed several of these robberies with Joseph Cutaia, a Luchese crime family associate, in 2008 or 2009, a rift developed between Cutaia and Manzella.  In 2009, when Manzella learned that Cutaia and his associates had robbed an individual who was associated with the Gambino crime family, Manzella and Gambino crime family soldier Thomas Orefice attempted to enlist the help of a cooperating witness to seek retribution against Cutaia.  Manzella asked the cooperating witness to lure Cutaia and another individual to a house for a fictitious robbery.  Once they arrived, Manzella planned to shoot Cutaia.  PSR ¶ 96.  Ultimately, the plan was never carried out because the cooperating witness did not relay the fictitious robbery to Cutaia.

II.   Presentence Report

According to the PSR, the defendant's total offense level is 29 and his criminal history category is IV, with a corresponding range of imprisonment of 121 to 151 months.  PSR ¶¶ 155, 179, 234.

---

Gambino crime family.  See United States v. Anthony Manzella et al., 09 CR 1243 (LAK).  On December 28, 2010, Manzella pled guilty to racketeering based on predicate acts of illegal gambling, extortion and wire fraud.  He was sentenced to 48 months' imprisonment on May 26, 2011.

[2]     Manzella and his coconspirators attempted the robbery because they believed that the individual thought to be cooperating had left a substantial sum of the cash with his business partner.

A.    The Guidelines Calculation

The PSR differs from the Guidelines calculation set forth in the plea agreement in three respects.  First, the PSR includes a four-level enhancement for abduction, pursuant to U.S.S.G. § 2B3.1(b)(4)(A).  As noted in the PSR, prior to the commission of the robbery, Manzella and his coconspirators forced the victim at gunpoint into the car they had driven.  PSR ¶ 80.  Inside, the defendant and his coconspirators pointed a gun at the victim's head and instructed him to unlock the pharmacy door and deactivate the alarm.  Id.  The car was parked and the victim was not transported to any other location during the short period of time that he was restrained in the car.  Id.  Therefore, the government applied the two-level enhancement for physical restraint pursuant to U.S.S.G. § 2B3.1(b)(4)(B), rather than the four-level enhancement for abduction pursuant to U.S.S.G. § 2B3.1(b)(4)(A).[3]  Second, the PSR includes a one-level enhancement for the theft of controlled substances, pursuant to U.S.S.G. § 2B3.1(b)(6).  The government agrees that this enhancement applies based on the facts of the case.  However, because it was not included in the Guidelines calculation included in the plea agreement, the government takes no position on whether it should be included in the guidelines calculation.  Third, the PSR calculates the defendant's criminal history category as IV.  At the time of his guilty plea, the defendant had not yet been convicted in the case pending in the Southern District of New York (United States v. Anthony Manzella, et al., 09 CR 1243)), which was based on charges unrelated to the charges in this case.  He has since been convicted and sentenced to 48 months' incarceration by the United States District Court for the Southern District of New York.  As a result, his criminal history is higher than contemplated in the plea agreement.[4]

Thus, the government agrees with the calculation set forth in the PSR, which is based on a base offense level of 20 (U.S.S.G. § 2B3.1(a)), a five-level enhancement for brandishing a

---

[3]    The government agrees with the Probation Department that the application of the abduction enhancement is legally permissible (PSR Addendum at 2-3).  However, because the government applied only the two point enhancement in the plea agreement, the government takes no position on which enhancement should be applied.

[4]    In the plea agreement, the parties incorrectly anticipated that the defendant's criminal history could increase to level III – as opposed to level IV – as a result of the pending case in the Southern District of New York.  Plea Agreement ¶ 4, fn 1.

firearm (U.S.S.G. § 2B3.1(b)(2)(C)), a four-level enhancement for abduction (U.S.S.G. § 2B3.1(b)(4)(A)), a one-level enhancement for theft of controlled substances (U.S.S.G. § 2B3.1(b)(6)), a two-level enhancement for a loss amount in excess of $50,000 (U.S.S.G. § 2B3.1(b)(6)) and a three-level reduction for acceptance of responsibility (U.S.S.G. § 3E1.1(a), (b)). However, as noted above, because the plea agreement did not include the enhancement for theft of controlled substances, and included the two point enhancement for physical restraint, rather than the four point enhancement for abduction, the government takes no position on whether the base offense level should be reduced to 26, as contemplated in the plea agreement. Based on a criminal history category of IV, the corresponding range of imprisonment for the offense level of 29 is 121 to 151 months' incarceration and for the offense level of 26 is 92 to 115 months' incarceration.

B.    The Defendant's Objections to the PSR

        The defendant's objections to the PSR are without merit. First, the defendant objects to the inclusion of information regarding La Cosa Nostra and the description of the criminal activities engaged in by other defendants charged in the case. Def. Obj. ¶¶ 2-4, 7, 8, 10, 13. While Manzella was not charged with being a member of La Cosa Nostra, this background is relevant to the charged conduct. As described more fully above, the robbery conspiracy to which Manzella pled guilty involved associates of organized crime, and his relationship with these individuals resulted from his own involvement with other members and associates of La Cosa Nostra. Moreover, his involvement in organized crime is appropriate to consider at sentencing pursuant to 18 U.S.C. § 3553(a). Thus, the inclusion of this information is appropriate and necessary to a complete understanding of the defendant's history and characteristics and the nature and circumstances of the offense to which the defendant pled guilty.

        The defendant further objects to the inclusion of the facts and circumstances of the Ocean Breeze Pharmacy robbery itself. Def. Obj. ¶ 5-6. Specifically, he objects to information relating to Manzella's plan to rob the pharmacy and to information relating to manner in which the robbery was completed. PSR ¶¶ 79-80. Manzella's objections to these paragraphs defy understanding. As these paragraphs contain information directly related to the robbery conspiracy to which Manzella pled guilty, their inclusion in the PSR is necessary and appropriate for an understanding of the conduct to which Manzella pled guilty.

The defendant objects to the enhancements for abduction, theft of a controlled substance and loss amount above $50,000.  Def. Obj. ¶¶ 11, 14, 15, 16, 17, 18.  As noted above, the government takes no position on whether the enhancement for physical restraint should apply rather than the enhancement for abduction.  The government also takes no position on whether the enhancement for theft of controlled substances should apply given that it was inadvertently omitted from the plea agreement. However, the defendant's objection to the enhancement for the loss amount is without merit.  Although the victim reported that the value of the drugs and money stolen was approximately $20,000, two cooperating witnesses in this case have advised that the value was much higher.  It is likely that the victim did not have a complete inventory of the drugs that were stolen and thus provided an estimate to the police.  Perhaps more importantly, as described in the addendum to the PSR, the estimated street value of the stolen drugs, as reported by two different cooperating witnesses, is the proper basis for determining the loss amount. PSR Addendum ¶ 4.  Moreover, the defendant's objection to this enhancement is contrary to the stipulation contained in paragraph 2 of the plea agreement, as is the defendant's assertion that the total offense level is 25.  In the plea agreement, the defendant stipulated to an offense level of 26.  Plea Agreement ¶ 2.

Finally, the defendant objects that the Court should not consider related criminal activities in determining Manzella's sentence.  Def. Obj. ¶¶ 9, 12.  Specifically, he objects to paragraph 96 of the PSR, which describes Manzella's attempt to seek retribution against individuals, including Joseph Cutaia, who had robbed a Gambino crime family associate.  He further objects to paragraph 19 of the PSR which indicates that the Court may consider Manzella's involvement in other robberies as an aggravating factor.  These objections are without merit as the Court is permitted to consider all of the defendant's criminal activities in imposing sentence.  18 U.S.C. § 3661.

With respect to the defendant's criminal history, the government defers to the Probation Department's calculations. Moreover, the defendant's assertion that Manzella's conviction in the United States District Court for the Southern District of New York should be deemed relevant conduct and should not be included in his criminal history calculation (Def. Obj. ¶ 20) is without merit.  Conduct that qualifies as relevant conduct under U.S.S.G. § 1B1.3 constitutes conduct that is part of the instant offense, (see U.S.S.G. § 4A1.2, App. Note 1) for the purposes of determining criminal history.  As described above, Manzella's involvement in organized crime is relevant background information to the robbery conspiracy to which he admitted by his guilty plea in this case.  However, Manzella's conviction in the Southern

5

District of New York related to a pattern of racketeering involving extortion, illegal gambling and wire fraud, crimes that are entirely distinct from and not relevant to the ones charged here.  See U.S.S.G. § 1B1.3.  Thus, Manzella's conviction in the Southern District of New York is properly included in his criminal history computation.  Moreover, contrary to his objection to the PSR, the defendant acknowledged in his plea agreement that a conviction in the Southern District of New York might increase his criminal history category here.  Plea Agreement ¶ 4 fn. 1.[5]

III. The Defendant's Family Circumstances

       The defendant's sentencing submission is focused on the care that he provided to his family members prior to his incarceration.  Although the Guidelines are of course advisory, the pertinent Guidelines policy statement provides that "family ties and responsibilities are not ordinarily relevant" (U.S.S.G. § 5H1.6), and the cases interpreting the Guidelines provide that family ties and relationships warrant a downward departure only when truly extraordinary.  See United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997).  Absent extraordinary circumstances, courts are discouraged from downwardly departing based upon family circumstances.  Galante, 111 F.3d at 1034; United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992) ("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.").

       Such extraordinary circumstances are present where family members are "uniquely dependent" upon a defendant for financial or emotional support. United States v. Faria, 161 F.3d 761, 762 (2d Cir. 1998).  In Faria, the Second Circuit reaffirmed its position that adverse consequences to a family, even a family that includes young children, due to a defendant's incarceration do not warrant a downward departure without truly exceptional circumstances.  Id. at 763.

       In this case, the defendant has presented compelling family circumstances with respect to the care and support he provides to his children, and in particular, the care he provides to his child with cerebral palsy. Def. Let. at 5.  While the government agrees that consideration of these factors is appropriate, the defendant's family circumstances are not

_____

       [5]      However, given the close proximity of the two indictments, the government takes no position on whether a criminal history category IV, while accurate under the Guidelines, overstates Manzella's criminal history.

extraordinary.  The children appear to have a substantial support network through their mother, maternal grandmother and other close relations and friends, as evidenced in the letters submitted on Manzella's behalf.  Thus, the children are not "uniquely dependent" on Manzella's support.

Moreover, Manzella's portrayal of himself as primarily concerned for the physical and financial well-being of his family is contradicted by his pattern of criminal activity during the entire time period Manzella claims to have been focused on the care of his wife and children.  Specifically, he was involved in six robberies or attempted robberies, illegal gambling, extortion and fraud.  PSR ¶¶ 79-81, 89, 91-94, 96, 168.  He used the business he founded, Gold Pride Food, which, according to his sentencing submission, was the primary source of income for Manzella's family, to defraud his own customers.  PSR ¶ 175-78. These actions hardly demonstrate the kind of family devotion that he seeks to convey in his letter.

IV.  <u>Conclusion</u>

The defendant played a central role in the robbery of the Ocean Breeze Pharmacy, in which he and his coconspirators held a gun to the head of an innocent pharmacy employee in order to rob the store.  The government respectfully submits that the nature and circumstances of this crime and the defendant's pattern of criminal activity described above, should be considered in determining the appropriate sentence under 18 U.S.C. § 3553.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  _____/s/_____
Rachel J. Nash
Assistant U.S. Attorney
(718) 254-6072

cc:  John C. Meringolo, Esq.
     Michael Dorra, U.S. Probation