**Meringolo & Associates, P.C.**
375 Greenwich Street
New York, New York 10013
(212) 941-2077 / (212) 202-4936 fax
www.meringololaw.com

July 18, 2011

Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *United States v. Manzella, et al.*, 10-Cr.-010 (ENV)

Dear Judge Vitaliano:

On behalf of Anthony Manzella, we respectfully submit this letter to request that the Court impose a sentence in this case to run concurrently with the sentence of 48 months imposed by Judge Lewis A. Kaplan in the Southern District of New York on May 11, 2011 in case 09-Cr.-1243 (LAK). Pursuant to the factors under 3553(a) and Section 5G1.3 of the Sentencing Guidelines, a concurrent sentence is appropriate in this case.

**Statement of Facts**

On April 20, 2010, Anthony Manzella was charged in the Southern District of New York ("S.D.N.Y.") with racketeering conspiracy and the commission of various racketeering acts in violation of 18 U.S.C. §1961 et seq. On May 13, 2010, the Eastern District of New York ("E.D.N.Y.") charged Mr. Manzella with a Hobbs Act robbery, conspiracy to commit robbery, and use of a firearm in connection thereto in the instant matter. The facts and circumstances giving rise to each of these cases are related and the crimes to which Mr. Manzella pled guilty arose out of the same pattern of criminal activity.

In the S.D.N.Y., Mr. Manzella was charged with crimes alleged to have occurred in connection with his role as an associate of the Gambino Organized Crime Family. *See* Exhibit A, Superseding Indictment S1 at 6. In that capacity, he was alleged to have participated in various criminal activities, including the ones to which he pled guilty—attempted extortion and extortion conspiracy of "Victim-4," participating in an illegal gambling business (a high stakes poker game), and wire fraud and transportation of fraudulently obtained property in connection with a meat distribution business. The conspiracy was alleged to have existed "from at least in or about the 1980's, up to and including in or about March 2010." Exhibit A, Superseding Indictment S1 at 7. Each of these acts was also charged as a separate count in the indictment, and each was alleged to have occurred "within the Southern District of New York and elsewhere." *See generally* Exhibit A, Superseding Indictment S1.

Mr. Manzella pled guilty in the S.D.N.Y. on December 28, 2010. On May 11, 2011, Judge Kaplan sentenced Mr. Manzella to 48 months of incarceration for his role in these offenses. *See* Exhibit B, Docket of Case 09-Cr.-1243 (LAK) at docket entry 274.

In the E.D.N.Y., Mr. Manzella was charged with a Hobbs Act robbery and robbery conspiracy in violation of 18 U.S.C. § 1951(a).  *See* Exhibit C, Superseding Indictment S5 at 37.  Mr. Manzella was charged specifically with conspiring to rob and with robbing employees of a Staten Island pharmacy in the spring of 2008.  Exhibit C, Superseding Indictment S5 at 37.  He was also charged with brandishing a firearm in connection with that robbery.  Exhibit C, Superseding Indictment *S5* at 38.  Although most of his codefendants were charged with Racketeering and Racketeering Conspiracy in connection with the Luchese Organized Crime Family in this case, Mr. Manzella was not.  Mr. Manzella pled guilty to the robbery conspiracy on December 8, 2010.  *See* 10-Cr.-010 (ENV) Docket Entry 143.

As set forth in greater detail in the Argument, *infra*, Mr. Manzella's E.D.N.Y. case, which was charged in a separate indictment, could, and should have been incorporated into his S.D.N.Y. case under a single indictment.  Mr. Manzella pled guilty in the S.D.N.Y. to conduct spanning from 1980 to March of 2010—nearly Mr. Manzella's entire lifetime.  He pled guilty in the E.D.N.Y. to a Hobbs Act robbery conspiracy within the same time period—in May 2008.

Importantly, Mr. Manzella was charged in the S.D.N.Y. with RICO conspiracy and RICO substantive counts—allegations that asserted that Mr. Manzella's criminal activity during the time period had been carried out in furtherance of the charged enterprise—the Gambino Organized Crime Family.  Several of the acts to which Mr. Manzella pled guilty in the S.D.N.Y. case were committed in the Eastern District of New York—including the extortion of Victim 4, which the S.D.N.Y. charged as a violation of the Hobbs Act (18 U.S.C. §1951(b)) the same statute under which the E.D.N.Y. charged the Hobbs Act robbery conspiracy (18 U.S.C. §1951(a)).  Each of those acts would reasonably have been considered relevant conduct in a single prosecution for the other.

Section 1951 states in relevant part:

> **(a)** Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, **by robbery or extortion or attempts or conspires so to do**, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
>
> **(b)** As used in this section—
>
>> **(1)** The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
>>
>> **(2)** The term "extortion" means the obtaining of property from another,

> with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. §1951 (emphasis supplied).

The S.D.N.Y. extortion of Victim 4 and the E.D.N.Y. Hobbs Act robbery conspiracy are both charged under this statute. Thus, two of the four total offenses to which Mr. Manzella pled guilty in the winter of 2010-2011 are legally nearly identical.

Moreover, the government's actions in the two cases demonstrate their relatedness. First, the search warrant for Mr. Manzella's home was executed jointly by Agent Paul Harris (S.D.N.Y.) and Agent Tom Kennedy (E.D.N.Y.) on April 1, 2010.[1]  At that time, Agents Harris and Kennedy, on information and belief, asked Mr. Manzella to cooperate and indicated that they could make the charges in both districts "disappear" in exchange for Mr. Manzella's assistance. Further, when Mr. Manzella was arrested on April 20, 2010 to face the S.D.N.Y. RICO charges, he was arrested by Agent Kennedy (E.D.N.Y.).  Thus, even setting aside the factual relatedness of the cases, the government's own agents acted in concert to prosecute Mr. Manzella in the two indictments.

Mr. Manzella is serving the sentence imposed on May 11, 2011 by the Honorable Lewis A. Kaplan in the S.D.N.Y.  He is scheduled to be sentenced in the E.D.N.Y. by Your Honor on July 22, 2011.

## Argument

A concurrent sentence in the E.D.N.Y. is appropriate based on the sentencing factors in 18 U.S.C. § 3553(a); Sections 4A1.1, 4A1.2, and 5G1.3 of the Sentencing Guidelines; and case law in this Circuit.

### A. A Concurrent Sentence Is Appropriate Based On the 3553(a) Factors.

"[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . ." 18 U.S.C. § 3584(a).  "The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b).

Section 3553(a) instructs:

"The Court shall impose a sentence sufficient, but not greater than necessary, . . . [and] shall consider—

  1.  The nature and circumstances of the offense and the history and characteristics of

---

[1] Information in this paragraph was provided by Mr. Manzella to the defense based on his recollection of the events.

    the defendant;

2.  The need for the sentence imposed—

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from further crimes of the defendant;

    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.  The kinds of sentences available;

4.  The kinds of sentence and the sentencing range established . . . [by the Sentencing Guidelines];

5.  Any pertinent policy statement . . .

6.  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.  The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (some minor alterations not noted).

  Though the Guidelines are an important factor in the sentencing analysis, they are advisory and the Court is generally free to impose a non-Guidelines sentence. *United States v. Gall*, 128 S. Ct. 586 (2007); *United States v. Booker*, 543 U.S. 220 (2005). In this Circuit:

> A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. . . . In this way, the district court reaches an informed and individualized judgment in each case as to what is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a).

*United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (emphasis supplied) (footnotes omitted).

  The Supreme Court confirmed *Cavera*'s approach in *Nelson v. United States*, 129 S. Ct. 890 (2009), and *Spears v. United States*, 129 S. Ct. 840 (2009). In *Nelson*, the Court instructed that:

> [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. Instead, the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter.

*Nelson*, 129 S. Ct. at 891-92 (internal citations omitted).  Thus, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Nelson*, 129 S. Ct. at 892 (emphasis in original).

In the instant case, although the defense respectfully refers the Court to its sentencing memorandum filed on behalf of Mr. Manzella on July 11, 2011 (Docket Entry 207), we note briefly some of the salient features of Mr. Manzella's personal history in light of the 3553(a) factors and in support of a concurrent sentence.

Mr. Manzella comes from a broken home and suffered from the lack of a strong male role model in his early years.  In light of this early experience, Mr. Manzella was a constant and stable father to his five children, including a four-year-old daughter who suffers from multiple physical disabilities.  Mr. Manzella has expressed his remorse for his actions and especially for the effect they have had on his young children, in whose lives his absence is felt daily.  Throughout his incarceration, Mr. Manzella has volunteered for unpleasant menial tasks within the correctional facility in exchange for extra visiting hours with his children.  Both he and his wife look forward to the time when he will be home again and able to resume a steady role in his family's life.

Dara Manzella, Mr. Manzella's wife, writes in part:

> I can sit here and write all the wonderful things that I love and miss about my husband, but words on a piece of paper will never describe the feelings I have for him as my husband or as the father of my children.  He is missed beyond words . . . .
>
> Anthony devoted his nights to working and his days to helping me raise our five children.  The twins started therapy at two weeks old and were doing great, but as they were reaching six months, we started to see a lot of delays, especially with my daughter Alivia.  We started bringing her to specialists and discovered that her delays came from loss of oxygen when my water broke, which caused a mild form of cerebral palsy.  We acted immediately, and Alivia has had extensive therapy from that day forward.  Through it all, my husband was my backbone and my partner.  I continue to do everything for my children, but it kills me not to have him here for them.
>
> . . . [T]he thought of being alone, dealing with leg-lengthening and spinal surgeries scares me to death.  My husband would always tell me, 'Everything is going to be okay.  We are a team, and we will get through it together.'  Now, I

    have been left alone to deal with it.  I am not strong enough to endure it without him.

*See* Letter from Dara Manzella, attached to the defendant's sentencing memorandum as Exhibit C.

    Given that Mr. Manzella is currently serving a 48-month sentence in federal custody, we respectfully submit that a concurrent sentence would be sufficient to satisfy the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).

    **B. A Concurrent Sentence Is Appropriate Based On Sections 4A1.1, 4A1.2, and 5G1.3 Of The Sentencing Guidelines.**

        **1. The S.D.N.Y. and E.D.N.Y. Convictions Are Part Of The Same Course Of Conduct.**

    A concurrent sentence is appropriate based on Sections 4A1.1, 4A1.2, and  5G1.3 of the United States Sentencing Guidelines.  Although the Presentence Report in this case places Mr. Manzella in Criminal History Category IV, Sections 4A1.1 and 4A1.2 of the Sentencing Guidelines indicate that Mr. Manzella should be sentenced in Criminal History Category II because his "prior sentence" in the S.D.N.Y. case was for the same course of conduct as the instant offense—an act relating to the affairs of the enterprise charged in the S.D.N.Y. indictment and during the same period of time as the conduct charged therein.

    Section 4A1.1 provides for the addition of criminal history category points "for each prior sentence" of a defendant.  U.S.S.G. § 4A1.1.  A "prior sentence" is "any sentence previously imposed . . . for conduct *not* part of the instant offense."  U.S.S.G. § 4A1.2(a) (emphasis supplied).   Conduct that *is* part of the instant offense is "conduct that is relevant conduct to the instant offense under the provisions of section 1B1.3."  U.S.S.G. § 4A1.2 (Application Note 1).  "Relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" that "were part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. §§ 1B1.3(a)(1)(A), (a)(2).

    It follows, therefore, **that a sentence imposed for acts that were part of the same course of conduct or common scheme or plan as the offense of conviction is not a "prior sentence" within the meaning of Section 4A1.1**.  *See United States v. Brennan*, 395 F.3d 59, 70 (2d Cir. 2005) (finding that the sentencing court had "erred in imposing criminal history points" based on the defendant's prior sentence under the above standard).; *United States v. Thomas*, 54 F.3d 73, 83-84 (2d Cir. 1995).   The Southern District has found that a Criminal History Category enhancement "for participation in the same scheme or course of conduct" would "unjustly penalize" a defendant.  *See United States v. Chambers*, 2001 WL 96365 at *3 (S.D.N.Y. Feb. 2, 2001); *United States v. Casiano*, 2001 WL 96366 at *3 (S.D.N.Y. Feb. 2, 2001) ("[T]he date of the prior offense falls within the course of conduct federal investigators recognize to be a part of the conspiracy at issue here. . . . Therefore, adding criminal history

points for that conviction . . . would unjustly penalize Casiano multiple times for participation in the same scheme or course of conduct.").

In the S.D.N.Y. Presentence Report, the Probation Department included the instant E.D.N.Y. offense in its calculation of Mr. Manzella's Criminal History Category as "any other conviction" pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.2(a)(4)). *See* S.D.N.Y. PSR ¶ 113-117. The addition of the E.D.N.Y. conviction to Mr. Manzella's criminal history resulted in a total of four criminal history points—at the low end of Category III.

Similarly, in the E.D.N.Y., the Presentence Report included the S.D.N.Y. conviction in the calculation of Mr. Manzella's Criminal History Category. *See* PSR ¶ 167. Based on the length of sentence imposed, the addition of this conviction to Mr. Manzella's criminal history resulted in a total of 7 criminal history points, which placed Mr. Manzella in Criminal History Category IV.

Notwithstanding the Probation Departments' decisions to count the related offenses in the criminal history computations rather than as relevant conduct for purposes of the offense level calculation, the defense maintains that Mr. Manzella's conduct in each of these cases is correctly evaluated as "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(A).

**First**, Mr. Manzella committed the offenses within the same time period.

**Second**, the E.D.N.Y. conviction could properly have been charged as a predicate act in the S.D.N.Y. RICO indictment because many of the crimes charged in the S.D.N.Y. indictment occurred on Staten Island and in Brooklyn—i.e., in the Eastern, not the Southern, District. *See, e.g., United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008) ("In a conspiracy prosecution, venue is proper in any district in which an overt act in furtherance of the conspiracy was committed," and "a RICO conspiracy does not call for a fundamentally different analysis.")

**Third**, the E.D.N.Y. Presentence Report contains information indicating that Mr. Manzella's offense of conviction in that district was related at least in part to his affiliation with the criminal enterprise charged in the S.D.N.Y.  For example, in paragraphs 91 and 94, the Presentence Report describes "relevant conduct" acts in which Mr. Manzella either reported to or acted with Thomas Orefice, an alleged member of the Gambino Organized Crime Family.  Notably, in the S.D.N.Y. indictment, Manzella was alleged to be an associate of the Gambino Family who reported to Orefice.

Thus, substantial evidence exists from which the Court can conclude that the instant offense is part of the same course of conduct as that for which Mr. Manzella was sentenced in the S.D.N.Y. and that no Criminal History Category points should be added in calculating the appropriate sentence for Mr. Manzella in this case.

### 2. A Concurrent Sentence Is Appropriate Pursuant to Section 5G1.3 Of The Sentencing Guidelines.

Section 5G1.3 of the Sentencing Guidelines provides:

> (b) If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
>> (1) the court **shall** adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>>
>> (2) **the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment**.
>
> (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(b)-(c) (emphasis supplied).

As Judge Holwell explained in *United States v. Leo*, 706 F. Supp. 2d 544, 547-48 (S.D.N.Y. 2010):

> If a prior conviction constitutes "relevant conduct" under this provision, two important and reflexive consequences follow. First, the prior conviction will be considered in calculating the defendant's base offense level. *See* . . . U.S.S.G. § 4A1.2, application note 1 ("Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3."). Secondly, if the conviction is "relevant," it will not count as criminal history. U.S.S.G. § 4A1.2, application note 1 (In computing criminal history, "'[p]rior sentence' means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense.").

As set forth in Section (B)(1), *supra*, the S.D.N.Y. sentence and consequent term of imprisonment is relevant conduct to the instant offense. Therefore, "the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b).

Hon. Eric N. Vitaliano
July 18, 2011
Page 9 of 15

      Moreover, even if the Court evaluates the relationship between the two cases differently and finds that U.S.S.G. § 5G1.3(c) applies, we respectfully submit that a concurrent term of imprisonment would be "a reasonable punishment for the instant offense."

      In addition, the Court is not bound by the parties' stipulated facts in the plea agreement. *See* U.S.S.G. § 6B1.4. Thus, the Court may properly determine the facts of Mr. Manzella's offense conduct as they relate to the correct Guidelines calculation and is not required to accept the stipulations in the agreement.

      As set forth below, if Mr. Manzella had been charged in a single indictment, his offense level would have been 26, and his Criminal History Category would have been II—a Guideline range of 70 to 87 months for *all* of the offense conduct including the S.D.N.Y. conduct for which he is currently serving time.

**Southern District Offense Level Calculation[2]:**

    **(a) Attempted Extortion and Extortion Conspiracy in violation of 18 U.S.C. § 1951(b)**:

| | |
|---|---|
| Base Offense Level (§2B3.2(a)) | 18 |
| Express or implied threat (§2B3.2(b)(1)) | +2 |
| Loss of over $10,000 (§2B3.2(b)(2) and §2B3.1(b)(7)(B)) | +1 |
| Adjusted Offense Level—Group A (Subtotal) | 21 |

    **(b) Wire Fraud and Transportation of Fraudulently Obtained Property in violation of 18 U.S.C. § 1343 and 2314:**

| | |
|---|---|
| Base Offense Level (§2B1.1(a)) | 7 |
| Loss between $200,000 and $400,000 (§2B1.1(b)(1)(G)) | +12 |
| Adjusted Offense Level—Group B (Subtotal) | 19 |

    **(c) Illegal Gambling in violation of 18 U.S.C. § 1955:**

| | |
|---|---|
| Base Offense Level (§2E3.1(a)(1)(A)) | 12 |
| Adjusted Offense Level—Group C (Subtotal) | 12 |

---

[2] The following calculations are taken from the Presentence Report submitted by the Probation Department for the Southern District of New York in case 09-Cr.-1243 (LAK).

### (d) S.D.N.Y. Grouping Calculation:

| Multiple Count Adjustment (§3D1.4) | | Units |
|---|---|---|
| Adjusted offense level group A | 21 | 1 |
| Adjusted offense level group B | 19 | 1 |
| Adjusted offense level group C | 12 | 0 |
| Total units | | 2 |
| Greatest adjusted offense level | 21 | |
| Increase in offense level | +2 | |
| Combined adjusted offense level | 23 | |
| Acceptance of responsibility (§3E1.1(a) and (b)) | -3 | |
| TOTAL OFFENSE LEVEL | 20 | |

### Plus: Eastern District Offense Level Calculation—violation of 18 U.S.C. § 1951(a)[3]:

| Base Offense Level (§2B3.1(a)) | 20 |
|---|---|
| Firearm brandished (§2B3.1(b)(2)(C)) | +5 |
| Restraint of victim (§2B3.1(b)(4)(B)) | +2 |
| Loss amount greater than $50,000 (§2B3.1(b)(7)(C)) | +2 |
| Adjusted Offense Level (Subtotal) | 29 |

### S.D.N.Y. and E.D.N.Y. Combined Grouping Calculation:

| Multiple Count Adjustment (§3D1.4) | | Units |
|---|---|---|
| Adjusted offense level E.D.N.Y. | 29 | 1 |
| Adjusted offense level group A | 21 | ½ |
| Adjusted offense level group B | 19 | 0 |

---

[3] This calculation is taken from Mr. Manzella's plea agreement at 2-3.

| | | |
|---|---|---|
| Adjusted offense level group C | 12 | 0 |
| Total units | | 1 ½ |
| Greatest adjusted offense level | 29 | |
| Increase in offense level | +1 | |
| Combined adjusted offense level | 30 | |
| Acceptance of responsibility (§3E1.1(a) and (b)) | -3 | |
| Global point reduction because all defendants pled | -1 | |
| **TOTAL OFFENSE LEVEL** | **26** | |

Thus, had Mr. Manzella been charged in a single indictment, he would have been exposed to a total offense level of 26.

In addition, based on available information about Mr. Manzella's prior criminal history, which was submitted to the Probation Department, the government, and the Court in Mr. Manzella's objections to the PSR, the defense submits that Mr. Manzella would have been in Criminal History Category II at the time of sentencing, leading to a Guideline range of 70 to 87 months for *both* cases.

Thus, the defense respectfully submits that the correct Guideline range in the instant case is 70 to 87 months, with credit for the 48-month sentence imposed by Judge Kaplan.

## C. A Concurrent Sentence Is Appropriate Based On Case Law In This Circuit.

"A district court's sentencing decision under § 5G1.3 will not be overturned absent an abuse of discretion." *United States v. Matera*, 489 F.3d 115, 124 (2d Cir. 2007) (citing *United States v. Livorsi*, 180 F.3d 76, 82 (2d Cir. 1999)).

Section 5G1.3 exists in order to ensure that "punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e. had all of the offenses been prosecuted in a single proceeding)." *Witte v. United States*, 515 U.S. 389, 404-05, 115 S. Ct. 2199 (1995). The Second Circuit has interpreted § 5G1.3 strictly:

> In order to trigger the application of § 5G1.3(b), an offense other than the one for which a defendant is being sentenced (a "separate offense") must not only (1) be taken into account "in the determination of the offense level for the instant offense [of conviction]," but it must also (2) be "fully taken into account" . . . in that determination. . . . In fact, the Guidelines calculation of a defendant's offense level may take into account separate offenses through a number of different

> mechanisms-for instance, offense-specific enhancements such as § 2L1.2(b)(1)(A), consideration of the prior offense as "relevant conduct" under § 1B1.3, and application of career offender provisions, see §§ 4B1.1-2. But all such mechanisms trigger application of § 5G1.3(b) if and only if they take into account the separate offense(s) fully. . . . We therefore read the modifier "fully" to restrict § 5G1.3(b) to a particular sub-set of all those circumstances in which a separate offense is, in some way, considered in determining the Guidelines offense level.

*United States v. Garcia-Hernandez*, 237 F.3d 105, 108-09 (2d Cir. 2000) (internal citations omitted). Thus:

> We believe that § 5G1.3(b)'s prohibition of consecutive sentences is aimed at situations in which separate, non-offense conduct could, absent operation of this sub-section, otherwise be the basis both (1) for sentencing defendant as if that conduct had been part of the offense(s) of conviction, and (2) for additional punishment of that same conduct in another, and separate, criminal proceeding. . . . [W]hen (for whatever reason) such a separate offense has, in fact, been criminally punished in another proceeding, § 5G1.3(b) applies. This approach is consistent with what little guidance the Guidelines and the cases provide in understanding the concept of a "full" taking into account. Thus, we have recognized that, generally speaking, consideration of separate offenses as relevant conduct does meet the "fully taken into account" requirement of § 5G1.3(b). . . .

*Garcia-Hernandez*, 237 F.3d at 109-10 (some internal citations omitted).

As later interpreted by this Circuit, however, *Garcia-Hernandez* requires that:

> [I]n order for a prior offense to be "fully taken into account" by the sentencing court, the conduct underlying that offense must play a role in the determination of the defendant's offense level. **Generally, this will mean that the prior offense will be considered as "relevant conduct."** More recently, in *United States v. Williams*, 260 F.3d 160, 166-68 (2d Cir. 2001), we further clarified that the prior offense conduct must not only qualify theoretically as relevant conduct, but must actually be considered by the sentencing court in its Guidelines calculations.

*United States v. Sencion*, 38 Fed. Appx. 638, 640 (2d Cir. 2002) (emphasis supplied) (upholding partially concurrent sentence where sentencing court "could have considered the prior drug conduct as relevant conduct, but it did not").

Similarly, in *United States v. Leo*, 706 F. Supp. 2d 544 (S.D.N.Y. 2010), the Honorable Richard J. Holwell, Jr. imposed a concurrent sentence, finding that the defendant's prior conviction was "relevant conduct" under the Guidelines. In *Leo*, the defendant pled guilty in 2007 to "two counts of conspiracy to commit extortion based on allegations of loansharking and gambling-related conduct" despite being warned by the government that additional charges were pending. *Leo*, 706 F. Supp. 2d at 545. He was sentenced to 60 months in prison on February 28, 2008 and, on February 4, 2009, the government re-indicted Leo for "more loansharking and

gambling-related conduct. Along with additional counts of extortion and illegal gambling, the new indictment stated charges under the Racketeer Influenced and Corrupt Organization Act ("RICO")-one for a substantive RICO violation and one for a RICO conspiracy. . . ." *Leo*, 706 F. Supp. 2d at 545.

Finding that "the extortion conspiracies from the first case could have been charged as predicate RICO acts in the second indictment," Judge Holwell sentenced Leo to a concurrent sentence of 78 months, imposed as an 18-month consecutive sentence to the 60 months imposed in 2008. *Leo*, 706 F. Supp. 2d at 545, 551.

Judge Holwell reasoned that "the prior conviction for conspiracy to extort constituted 'relevant conduct' for purposes of Leo's criminal history level (meaning the conviction would not count as criminal history) and his offense level (meaning that the conviction would increase the offense level)." *Leo*, 706 F. Supp. 2d at 546-47. Applying U.S.S.G. § 5G1.3(b), Judge Holwell credited Leo with the time served on the 2008 sentence. *Leo*, 706 F. Supp. 2d at 550-51.

The Court reasoned that:

> [T]he prior conviction was . . . "relevant conduct" under subsection [1B1.3](a)(1), which covers "all acts and omissions . . . that occurred during the commission of the offense of conviction." Because Leo's "offense of conviction" was a RICO conspiracy, and because the extortion conspiracies underlying the prior conviction were predicate acts of the RICO conspiracy (indeed, the government never disputed this point), those extortion conspiracies occurred "during the commission of the offense of conviction" under subsection (a)(1). They are therefore relevant conduct to be used in calculating the proper offense level.

*Leo*, 706 F. Supp 2d at 548-59.[4]

Because Judge Holwell found the prior conviction to be "relevant conduct," he applied the mandatory concurrency instruction of § 5G1.3(b), which "requires district courts to, first, adjust the sentence to reflect time already served on a related sentence, and second, to impose the sentence to run concurrently to the time remaining on the related sentence." *Leo*, 706 F. Supp. 2d at 549-50.

---

[4] *See also Witte v. United States*, 515 U.S. 389, 393, 115 S. Ct. 2199, 132 L.Ed.2d 351 (1995) ("Under the Sentencing Guidelines, the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction."); *United States v. Massino*, 546 F.3d 123, 135-36 (2d Cir. 2008) ("When the offense of conviction is a RICO conspiracy, relevant conduct may include 'underlying predicate acts' . . .") (internal citation omitted); U.S.S.G. § 1B1.3 Background, at 30 ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range.").

Hon. Eric N. Vitaliano
July 18, 2011
Page 14 of 15

As set forth above, Anthony Manzella pled guilty to two related cases—first in the E.D.N.Y. on December 8, 2010 and second in the S.D.N.Y. on December 28, 2010. He appears before this Court after the imposition of his sentence in the S.D.N.Y. solely because of a delay in completion of his Presentence Report by the Probation Office in the E.D.N.Y. Thus, although Mr. Manzella was sentenced first under the RICO indictment, Judge Holwell's reasoning in *United States v. Leo* applies, and the application of U.S.S.G. § 5G1.3(b) is proper.

The criminal conduct to which Mr. Manzella pled guilty in the E.D.N.Y. arose out of the same course of conduct and in furtherance of the same overarching enterprise as his RICO conviction in the S.D.N.Y. Indeed, Mr. Manzella's E.D.N.Y. codefendants were charged with a RICO conspiracy and RICO substantive counts in furtherance of Organized Crime. By virtue of an allegedly different allegiance between Mr. Manzella and his E.D.N.Y. codefendants, Mr. Manzella was not charged under the RICO statute in this District. Nevertheless, the defense submits that the E.D.N.Y. charge for which Mr. Manzella is to be sentenced by Your Honor would more properly have been charged in the S.D.N.Y. as a predicate act in that RICO indictment.

Therefore, the defense respectfully requests that this Court, in determining the appropriate sentence for Mr. Manzella, consider the S.D.N.Y. conduct as relevant and take it into account in the calculation of Mr. Manzella's offense level, imposing a concurrent sentence to satisfy the Guidelines and the interests of justice.

### D.   Calculation Of A Concurrent Sentence

If the Court agrees that a concurrent sentence is warranted, the defense respectfully requests that the Court follow the procedure used by Judge Holwell in *United States v. Leo*, 706 F. Supp. 2d 544 (S.D.N.Y. 2010), in order to ensure that the Bureau of Prisons will calculate the sentence in the manner the Court intends.

In *Leo*, Judge Holwell found that the defendant's prior conviction was "relevant conduct" and that, therefore, U.S.S.G. §5G1.3(b) applied, mandating imposition of a concurrent sentence. *Leo*, 706 F. Supp. 2d at 548-550. Leo was already serving a 60-month sentence, and the Court determined that the appropriate sentence for Leo would be 70 months—in the middle of the Guidelines range of 63-78 months. Leo had already served 34 months, which would have indicated that a sentence of 36 months to be served concurrently with the undischarged portion of the 60-month sentence would yield the desired result. *Leo*, 706 F. Supp. 2d at 550.

However, because of the Bureau of Prisons' rules for calculating concurrent sentences, the parties requested that the Court instead "clearly state the sentence in terms of the number of months that [the defendant is] to serve consecutive to [his] existing sentence." *Leo*, 706 F. Supp. 2d at 550. The Court granted this request, calculated the time that Leo was expected to serve on the 60-month sentence (52 months, including credit for good time), and imposed a term of 18 months to run consecutive to the prior undischarged sentence, for a total term of imprisonment of 70 months. *Leo*, 706 F. Supp. 2d at 551.

      Further support for the approach taken in *Leo* comes from Application Note 3(E) to U.S.S.G. §5G1.3(c), which provides for an adjusted sentence "to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings" in order to ensure "a reasonable incremental punishment for the instant offense of conviction." *See* U.S.S.G. §5G1.3(c) (Application Note 3(E)).

      If the Court determines that a concurrent sentence is appropriate in this case, the defense respectfully submits that a similar method of calculation of Mr. Manzella's sentence would assure the Court that the Bureau of Prisons' calculation matches the Court's intention.

      In addition, if the Court agrees with the defense's position that a concurrent sentence is appropriate in this case, the defense notes that an additional presentence study and report by the Bureau of Prisons could appropriately be requested by the Court pursuant to 18 U.S.C. § 3552(b) in order to inform the Court and the parties of how the Bureau of Prisons would calculate a concurrent sentence's duration. Because Mr. Manzella has been incarcerated for 15 months in total on both the S.D.N.Y. and the E.D.N.Y. cases, we respectfully submit that additional information from the Bureau of Prisons as to its calculation of the relationship between the two sentences and the total time already served is merited to assist the Court in formulating the sentence to ensure that the Bureau of Prisons effectuates the Court's intention.

## Conclusion

      For the reasons set forth above, Anthony Manzella respectfully requests that the Court impose a sentence to run concurrently with the sentence imposed by Judge Kaplan in the S.D.N.Y. on May 11, 2011.

      Respectfully,

_____/s/_____
John C. Meringolo, Esq.
Meringolo & Associates, P.C.
375 Greenwich Street, 7th Floor
New York, NY 10013
john@meringoloesq.com

Cc:    AUSA Rachel Nash (via ECF)